It's good morning and may it please the Court. My name is John Schockett from Dorsey & Whitney here on behalf of En Vaux the Appellant. With me at counsel's table on the briefs is Michael King from Thomas Walgreen. The essence of this case is that the Social Security ALJ committed a serious legal error in ignoring Mr. Vaux's testimony about his debilitating pain, and this Court should reverse the case with an order to find Mr. Vaux disabled and award disability benefits. This is a pain case. Mr. Vaux is disabled, but not simply because of his original physical limitations, but because of his debilitating pain, which stemmed from a war wound he suffered while serving in the South Vietnamese Army in the Vietnam War. The Court has made it clear, most recently in Robbins v. Social Security Administration, that in pain cases, the ALJ must consider the effects of symptoms, including pain, that are reasonably attributed to a medical – a medically determinable impairment, or, as the Court said in Batson, symptoms that could reasonably be expected to be produced by a medically determinable impairment. The reason for this, as Robbins stated, is because subjective determinations may indicate more severe limitations or restrictions than can be shown by medical evidence alone. Once a claimant produces evidence that's supported by objective – or, once the claimant offers subjective pain testimony that's supported by objective medical evidence, the ALJ can only ignore that testimony by entering an adverse credibility finding that has to be supported by specific facts and conclusions, or entering a malingering finding. And there's absolutely no evidence that the ALJ did either of those things here, or that the record could support it if the ALJ decided to do it. Ginsburg. If we accept your argument and, you know, and our view of the record is consistent with your argument that, in fact, there is a medical basis for the claimant's You said, I think, at the outset that your view is that we would remand it with a direction for an award of benefits. And I'm wondering, in cases like this, we generally, I thought, if we were to agree with your argument, would simply remand it so that the ALJ could, if there's a basis for it, make clear and specific findings. in terms of the rejection. Your Honor, there is case law that supports remanding with an instruction to award benefits when the record's complete. And the ALJ was clearly required, based on the law, to consider the evidence. And based on the testimony by Mr. Avella about his pain, supported by objective medical evidence, no other conclusion besides disability could have been reached. And that's what we'd ask the Court to do. If the Court doesn't think that there's enough evidence in the record to support an automatic entry of a finding of disability, of course, in the alternative, we'd ask for a remand for a new hearing under the proper legal standard. But the preference, and we believe it is supported by case law and by the record in this case, is for a remand for an entry of finding. The reason for that is the ALJ simply ignored what Mr. Vogue said about his disabilities. And what he's able to do and what he can't do because of his pain. This goes to the daily activities issue that was discussed in previous cases today. The ALJ said Mr. Vogue helps with chores around the house. He goes to the store. He was able to live a normal life and go through normal days where he attended community college classes. That's not actually what Mr. Vogue said. What Mr. Vogue said is that he tried to take community college classes. He had to quit two of the three classes he was taking because he couldn't go regularly enough to take the tasks. The third class he was only able to complete because the professor essentially gave him unlimited rights to make up classes that he had to miss because of bad days. And he missed class at least once a week. The vocational expert testified based on flawed hypotheticals, but the vocational expert nonetheless said that employers really can't tolerate employees who have to miss more than two or so days a month due to disabling pain. And it's clear from the testimony in this case that Mr. Vogue would have to miss more than two days a month of a job. So based on that record, we believe that there is no way, that there's no other conclusion that the ALJ could reach based on Mr. Vogue's testimony other than that he is disabled and can't work. The vocational expert already provided the necessary evidence when coupled with his disability. Was the hypothetical to the vocational expert appropriate? No, Your Honor. It wasn't. It didn't take into account the pain testimony. It only took into account his exertional limitations, which are certainly part of his disability, but they're not the whole thing. And this Court's case law is quite clear that when pain testimony is offered and when it's supported by objective medical evidence, and it is here, as illustrated in the extracts from the record that I handed to the clerk, ER 262, there's a report from Dr. Sanford Wright that clearly states that he came in suffering from, he came in complaining about pain. This whole problem started with his war injuries in 1968. There is no question in Dr. Wright's mind that the pain stems from the war wounds and that there wasn't a surgical correction to it, but the pain's there. And that's what it came from. And it's perfectly reasonable as a medical matter. The ALJ effectively dismisses all of this evidence. And it's not just Dr. Wright. There are plenty more places in the record cited in our brief that support his pain testimony and show that it's reasonable that Mr. Vogt could suffer from this pain. The ALJ essentially grafts onto two reports, one by Dr. Rothstein, which is also in the highlighted extracts, where Dr. Rothstein explains that he couldn't find a medical basis for his left arm paresthesia, which is unrelated to the chest, back, and leg pain that Mr. Vogt says causes his disability and prevents him from being able to work. This is a peripheral issue, and it's not related to the core pain issue. There's also a And that report is a physical capacity analysis. It's not a pain analysis. So while it finds that based on a purely physical capacity, Mr. Vogt might be capable of work, it doesn't address the pain issue, and it doesn't provide any evidence one way or the other as to how much pain Mr. Vogt is suffering from. Unless the panel has any further questions, I'll save the remainder of my time for rebuttal. All right. Thank you. May it please the Court, Juwanna Edwards, here, representing the Commissioner for Social Security today. Well, this case is really a case that shows us where the medical evidence and plaintiff's testimony both support that this individual is not disabled. Now, we've heard some medical evidence from counsel, and some talk about the activities of daily living. But when you look at everything all together, you see that this person is capable of working. The medical evidence here shows that he had even exaggerated an out-of-proportion pain reflection to a physical examination. Where do you get the conclusion that his description of his pain is exaggerated? Well, in March 2002, there was he had a severely guarded effort, and it was his effort was out-of-proportion, was the doctor's exact words. He had an out-of-proportion tolerance to lifting compared to what his actual limitations were. Dr. Wright, that he spoke about, actually said the x-rays only showed mild degenerative disc disease in both the cervical and the lumbar spine. So the actual physical examination results don't support such the severely limited functioning that the plaintiff has claimed in this case. Now, other reports have shown, well, there's no explanation for why he would have a left arm paraplegia and loss of vibration. It's non-physiologic. There's no explanation for it. His treating physician followed him for quite a long time, even opined that he could do work that was, let me see here. She actually gave an opinion that he was able to perform light work with essentially the same limitations as the ALJ. That's Dr. Isinger. Where are you in the record with that? That would be helpful to me. That's on, in the ALJ's decision at 18, and then also at 457. Now, give me some help with where I am in the excerpts for this. Choose excerpts. You can choose supplemental excerpts. It's on SCR 457. SCR. Say the number again. 457. No, I'm afraid I don't have it. I can do it another way here. Okay. While you're looking, I would also say that this case is distinguished from I'm sorry. I have it here in front of me. Okay. Okay. So Dr. Isinger's opinion there is that he could perform light work and let me turn to the page as well. Light work or 460. Light work, no frequent bending, stooping, or twisting. No activities involving high risk, no impact, etc., which is based on no vibrational stress, which is almost exactly what the ALJ has found as an RFC in the decision. Further, although counsel says the ALJ did not consider the pain testimony, clearly on the ALJ's decision on transcript site 9, ER 9, he says the ALJ carefully considered the claimant's testimony concerning his subjective complaints and limitations. The claimant testified that he had pain in his low back. He also reported the existence of pain in his chest. He also reported pain and changes in weather. The ALJ did consider all of this in his decision and looked at the record as a whole. This, as I started Did he agree with that or did he discount that? He discounted it based on what the medical record said, what his treating position said, what the state agency said after having the benefit of a review of the entire record and the entire medical evidence. Also, I wanted to say this case is distinguished from Robbins in that in Robbins, the ALJ only briefly stated that the claimant was not entirely credible and didn't go into specific findings. This case is far different from that where the ALJ carefully went through the medical evidence, showed that Mr. Boat did live somewhat of a normal life. He paid his family's bills. He drove daily. He said he could drive 20 to 30 miles. He read books. He watched TV. He was a recipient of a grant to attend school. What would reading books have to do with it? Well, if you can read books, then maybe you have the concentration to be able to also do some work that would involve reading or concentration. Reading shows concentration. Yeah, might fall asleep in between. In between, I'm sorry. Might fall asleep. In between. I don't think they said that he fell asleep. And how about can you read books when you're in pain? I don't know. I don't think that he said how long that he was reading. But he did attend community college and received excellent grades. What about, I was just trying to get the timing, because his Dr. Isinger, I thought it was in 2002, she said that she thought he was permanently disabled. But then the other report is later and says that he can do meaningful work if it has certain limitations. Right. Right. Is there ever a follow-up to that to explain why there's two different views there? No, I don't believe that there's a follow-up. But the ALJ did discount the earlier opinion since the next one was so radically different and it was more, after more of a longitudinal relationship. In this case, too, the plaintiff has a date last insured of 12-31-01. And so, you know, as the evidence goes farther out, it becomes more remote. For example, the doctor writes opinion is in 2004. That's three years past the date last insured. And nevertheless, Dr. Wright still said he could not pick out any surgically significant problem that the plaintiff had in this case. And as I mentioned earlier, the x-rays only showed the mild degenerative disc disease involving cervical and lumbar spine. Let me ask you this. The ALJ gives two different hypotheticals to the vocational experts. Yes. Do you contend that the evidence supports the first less restrictive hypothetical or only the second more restrictive hypothetical? The first one was the one that was identical to the RFC in the decision, which is what we are, what I am defending here today within the corners of the decision. Giving the plaintiff the benefit of the doubt, the ALJ went and gave even a more extreme RFC, which the vocational expert actually found an additional job that the plaintiff could still perform. Yes. That job strikes me, I have to say, as nonsense. Call-out operator? Yes. Why is that? Well, as Pitt pointed out in the blue brief and then repeated in the reply, it's fairly obvious that this man has some difficulty with English. And even good English speakers have trouble with this job. I mean, that just doesn't strike me as a very sensible proposition. And I don't know what to make of the idea that there are 500 of these jobs in the State of Washington out of 2,000 in the entire country. I don't have the contrary evidence, but that does strike me as a little odd. Right. I have to say, if the second more restrictive hypothetical is the hypothetical and that's the job he can do given his English limitations, I don't find that one very convincing. Right. I see your point. However, it is an unskilled job, and I'm assuming that you would have a script that you would use for that position and you would be having not a real high level of English command that you would need. I think we've all had the experience of talking to perhaps telemarketers or other people whose language skills are not someone here in the United States. Yeah, but they're not very effective. Could be. That's true. But nevertheless, even if you take that job away, there was still the check cashier and office clerk jobs that were found. Yeah. But those are jobs with the less restrictive hypothetical. Correct. Which is the one that we believe is the supported by substantial evidence. Thank you. Thank you. Thank you. There's simply no basis for the ALJ's conclusion that the medical evidence for the argument that medical evidence presented in the testimony supports a finding of no disability. Mr. Riveau plainly testified that he couldn't go to five days of community college class a week and he often missed more than two of those. Here's your problem, and I'm on the fence in this case, as I read the various evaluations. The doctors sometimes say and sometimes just hint that they're having trouble substantiating the extent of the disability which he's claiming. How do you deal with that? Well, as to the fiscal capacity, we acknowledge that. It's unclear whether Mr. Riveau would qualify as disabled purely based on the physical capacity issue alone. And that's why the pain is so great. But the problem is a little – is not just the question of what the physical capacity is or isn't. There's some hinting in the doctor's reports that he is, in the words of your adversary this morning, exaggerating. And if he's exaggerating this, maybe he's exaggerating his descriptions of the pain,  So I want to hear your response. I haven't seen anything in the evidence that indicates he's exaggerating. Dr. Kumar refers to a guarded effort in doing physical capacity tests. But a guarded effort isn't the same thing as exaggerating. Someone who often experiences significant pain, pain that kicks in before the patient reaches the limits of his physical capacity, will exercise a guarded effort, because even if he's physically capable of pushing so hard or bending over so far, it really hurts to do that. So a guarded effort doesn't indicate lingering. It doesn't indicate that there's a lack of credibility. And even if, quote, which it doesn't, the ALJ doesn't say anything in the opinion that really supports that. There are no clear and specific reasons cited in the opinion indicating there's any sort of lack of credibility or lingering here. Moreover, we don't have a case that supports malingering, because Mr. Vo has tried to work twice. He first worked when he came to this country. He went on disability. He went off disability when he found a sedentary job that he could do. But eventually his pain got so bad that he couldn't do that anymore, and he stopped doing that job. Even after he applied for disability, he tried to go to community college to see if there was work that he could do. It didn't work out. But the point is, he tried. Someone who was exaggerating pain or malingering or trying to produce symptoms that weren't really there wouldn't go to community college, wouldn't go off disability to go back to work when it was possible. That person would take the quickest possible route to disability, and Mr. Vo simply hasn't done that. Now, as to the medical reports that seem to be conflicting, those deal with physical capacity. And as Robbins explains, the reason that pain testimony is different is because doctors can't analyze that as clearly. There only has to be a reasonable basis for the pain, not actual physical evidence of pain, because there can't be in those cases. Thank you. Thank you. We appreciate your argument, both counsel. The case just argued, Vo v. The Commissioner, is submitted. Our next case for argument is Lynn v. Gonzalez.
judges: Hug, McKeown, W. Fletcher